IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN RE NATURE'S SUNSHINE PRODUCTS SECURITIES LITIGATION | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS<br><br><br><br>Case No. 2:06-CV-267 TS |

This matter is before the Court on Defendants' Motion to Dismiss.[1]

## I.  INTRODUCTION

The facts are set forth by the parties in the pleadings and memoranda.  Plaintiffs bring the following claims in the Class Action Complaint ("CAC"): (1) violation of Section 10(b) of the Securities Exchanges Act of 1934 ("Exchange Act")[2] and SEC Rule 10b-5(b) by Defendant Faggioli, CEO of Nature's Sunshine Products ("NSP"), and Defendant NSP[3] stemming from

---

[1]Docket No. 88.

[2]15 U.S.C. § 78j(b).

[3]Plaintiff bases all claims against NSP under the doctrine of *respondeat superior*.

1

alleged material misrepresentations, in connection with the sale of NSP securities, to the investing public from March 16, 2005 through April 5, 2006;[4] (2) violation of Section 10(b) and SEC Rule 10(b)-5(a) and (c) by Defendants Faggioli and NSP for alleged misrepresentations to the NSP's independent auditor, KPMG LLP ("KPMG"), to obtain unqualified or "clean" audit opinions ("the scheme claim");[5] and (3) control person liability under Section 20(a) of the Exchange Act[6] against Defendant Faggioli, Defendant Huff, former CFO of NSP, and Cristiani, former Board Director and NSP Audit Committee Chairman.

Defendants now move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for, among other reasons, failure to plead fraud with particularity, or to meet the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[7] Having reviewed the memoranda, and heard oral argument, the Court now issues the following ruling.

---

[4]More specifically, Plaintiffs assert that Defendants issued and filed with the SEC materially false and misleading Sarbanes-Oxley Act ("SOX") certifications, Form 10-Q quarterly reports, and press releases in which Defendants falsely represented that they believed the Company's statements accurately reflected the financial condition of the Company and that they had disclosed to KPMG any potential fraud.

[5]The stated class period for the scheme claim is April 23, 2002 through April 5, 2006.

[6]15 U.S.C. § 78t(a).

[7]15 U.S.C. § 78u-4(b).

II.  DISCUSSION

A. Rule 12(b)(6) Standard

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[8]   A Rule 12(b)(6) motion to dismiss may be granted only if it appears beyond a doubt that the plaintiffs are unable to prove any set of facts entitling them to relief under their theory of recovery.[9]  All well-pleaded factual allegations in the amended complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[10]  But, the court "need not accept conclusory allegations without supporting factual averments."[11]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[12]

---

[8]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[9]*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

[10]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[11]*S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

[12]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

B.  Failure to Plead with Requisite Particularity

Federal securities fraud claims under Rule 10b-5 are subject to the pleading requirements of Fed. R. Civ. P. 9(b).[13]  Accordingly, a plaintiff must "set forth the time, place and contents of [any] false representation, the identity of the party making the false statements and the consequences thereof."[14]

The PSLRA also imposes pleading requirements for 10b-5 claims.  Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."[15]  Additionally,

> the PSLRA heightened the standard for pleading the scienter element of a securities fraud claim. . . . [Under the PSLRA,] the complaint shall, with respect to each act or omission alleged to violate [10b-5(b)], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.[16]

*1.  Rule 10b-5(b) Claim*

To state a claim under Rule 10b-5(b) for securities fraud, a complaint must allege that (1) the defendants made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) in connection with the purchase or sale of securities; (3) the defendants acted with scienter, that is, with intent to defraud or

---

[13]*See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

[14]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.2d 1246, 1252 (10th Cir. 1997) (citation and internal quotation marks excluded).

[15]*Adams*, 340 F.3d at 1095.

[16]*Id.*

recklessness; (4) the plaintiffs relied on the misleading statements; and (5) the plaintiffs suffered

damages as a result of their reliance.[17]

> (i) Untrue or Misleading Statement of Material Fact

>> a.  Untrue or Misleading Statement

Defendants generally assert that Plaintiffs have not identified any false statement or

explained why it is false.  More specifically, Defendants argue that Plaintiffs have not shown that

any financial statements, including its 2004 annual report on Form 10-K, issued November 22,

2005, contain misrepresentations.  Defendants note that NSP has not expressly admitted its

financials between 2002 and 2005 are inaccurate, has not restated its financials, and is currently

investigating whether it needs to do so.  Defendants assert that Plaintiffs do not identify any part

of the financial statements that is misstated, by how much, or why it is purportedly misstated.

Defendants also argue that Plaintiffs have not identified any false or misleading

statements within the March 16, 2005, May 9, 2005, August 5, 2005, and November 22, 2005,

SOX certifications ("2005 SOX certifications").  Citing language in the 2005 SOX

certifications,[18] and asserting that it is a qualifier of sorts, Defendants contend that Plaintiffs are

required to identify fraud involving management or employees exercising significant control

over financial reporting within NSP, and have not done so.  Finally, Defendants argue that

---

[17]*Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997).

[18]Defendants contend that, by signing the SOX certifications, Faggioli asserted that he
was not aware of any fraud *involving management or other employees having a significant role
over NSP's financial reporting*.

5

Plaintiffs have not shown how press releases[19] and 8-Ks[20] by NSP in late 2005 and early 2006 were false or misleading.

Plaintiffs argue that there are two types of false statements alleged: first, false 2005 SOX certifications signed by Faggioli,[21] and second, false reassurances, beginning in November 2005, that NSP's financial statements for the three and nine months ended September 30, 2005 were accurate.[22]

Plaintiffs first argue that the CAC identifies the dates of the 2005 SOX certifications,[23] specifies the precise statements alleged to be false,[24] and identifies why they are materially false. More specifically, Plaintiffs allege the statements to be materially false because:

1.     KPMG states in a March 27, 2006 letter to the SEC that:[25]

     a.     an investigation by a special committee of the board of directors of NSP found electronic evidence that Faggioli knew of a fraud in the international operations of the Company yet represented otherwise to KPMG in representation letters dated March 15, 2005, and August 5, 2005;

     b.     Faggioli had approved a payment in violation of the Foreign Corrupt Practice Act ("FCPA");

---

[19]The relevant dates are: November 21, 2005, December 1, 2005, and January 13, 2006.

[20]The relevant dates are: November 10, 2005, December 2, 2005, and January 17, 2006.

[21]CAC, at ¶¶ 37, 48, 52.

[22]*Id.* at ¶¶ 54-55, 58-60, 61-77.

[23]Attached to CAC.

[24]CAC, at ¶¶ 38, 39, 40.

[25]*Id.* at ¶ 41.

      c.    the evidence provided by the investigation indicates Cristiani was aware of the fraud, that it could be material, and that it could pose a significant problem to NSP, but that he did not disclose this to KPMG; and that

2.    Faggioli's payment was part of the fraud;[26]

3.    Faggioli sought to cover up the fraud by issuing a false management representation letter to KPMG;[27]

4.    KPMG states in a March 31, 2006 letter to the SEC that it informed NSP's board and audit committee of likely illegal acts it discovered in connection with its audit of NSP's financial statements for the three year period ended December 31, 2005;[28]

5.    NSP announced in a March 20, 2006 Form 8-K that it had contacted the U.S. Department of Justice about potential violations of law, and that its financial statements from 2002 through 2005 could not be relied on;[29]

6.    KPMG determined that the fraud would have a material impact on NSP's financial statements, identifying the errors and periods to which it related;[30] and

7.    a special committee, investigators, and KPMG later insisted that Faggioli be fired as a result of his involvement in fraud and illegal acts.[31]

Second, Plaintiffs argue that Defendants also gave false reassurances, through specific

press releases and 8-Ks, that NSP financial statements with respect to the three and nine months

---

[26]*Id.* at ¶¶ 45, 90, 92, 95, 111.

[27]*Id.* at ¶¶ 41, 90, 107-09, 118.

[28]*Id.* at ¶ 41.

[29]*Id.* at ¶¶ 43, 91.

[30]*Id.* at ¶¶ 45, 92.

[31]*Id.* at ¶¶ 93, 95, 118.

ended September 30, 2005, were accurate.[32]  Plaintiffs argue that the reassurances were false

because:

1. according to KPMG, as of March 15, 2005, seven months prior to these alleged reassurances, Faggioli was aware of serious fraud in NSP's international operations and had participated in illegal acts related to the fraud that had a material effect on NSP's financial statements;[33] and

2. Faggioli was aware of KPMG's raising issues regarding the accuracy of the financial statements for the period ended September 30, 2005;[34]

   a. as CEO, Faggioli was responsible for the accuracy of NSP's financial statements; and[35]

   b. it is logical to infer that, before Faggioli reassured investors that management believed the quarterly financials were accurate, they discussed with KPMG the accounting errors at issue which precluded KPMG from issuing a clean review opinion on the financial statements, otherwise no reasonable basis for the reassurances existed.[36]

Defendants reply, in part, by attacking the facts pleaded by Plaintiffs regarding KPMG's

statements.  Defendants emphasize that an auditor's statements must also be particularized,[37] and

that KPMG's statements are not.  Rather, Defendants assert that KPMG's statements are

conclusory allegations and opinion.  Defendants also attempt to downplay the statements by

KPMG by emphasizing the qualifying language in KPMG's statements such as "likely illegal

---

[32]*Id.* at ¶¶ 54, 58, 62, 69, 72, 73.

[33]*Id.* at ¶¶ 56, 64, 127.

[34]*Id.*

[35]*Id.* at ¶ 21.

[36]*Id.* at ¶ 128.

[37]Defendants cite, *e.g., In re Aspeon, Inc. Sec. Litig.*, 168 Fed. Appx. 836 (9th Cir. 2006), in support.

acts," and "appear to have had a material effect."  Finally, and in connection with the alleged qualifying language in the 2005 SOX certifications, Defendants dispute that KPMG asserted that Faggioli was involved in the alleged fraud.  Rather, Defendants argue that the only reasonable inference from KPMG's statement is that Faggioli was aware of the fraud.[38]  Defendants generally assert that Plaintiffs have not sufficiently set forth their allegations of the fraud upon which the alleged false statement is based.

Plaintiffs are required to identify in the Complaint specific facts that support the allegations about the misleading nature of Defendants' statements.[39]  However, "plaintiffs need only plead with particularity sufficient facts to support [their] beliefs."[40]  Clearly, generalized or conclusory allegations of fraud will not be sufficient.[41]  Accordingly, the Tenth Circuit has directed courts to "evaluat[e] the facts alleged in a complaint to determine whether, taken as a whole, they support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading."[42]

> Such an approach will involve an evaluation of (1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how

---

[38]Defendants argue that there is no connection between the fraud which Faggioli knew of, and the alleged illegal FCPA payment referred to by KPMG other than that they both related to the international operations of NSP.

[39]*Adams*, 340 F.3d at 1098.

[40]*Id.* at 1099 (citing *Novak v. Kasaks*, 216 F.3d 300, 314 n.1 (2d Cir. 2000), and stating "[w]e adopt an approach similar to the Second Circuit's in *Novak*").

[41]*Id.*

[42]*Id.*

strongly the facts support the conclusion that a reasonable person would believe
that the defendant's statements were misleading. . . . If, measuring the nature of
the facts alleged against these indicia, a reasonable person would believe that the
defendant[s'] statements were false or misleading, the plaintiff[s have] sufficiently
pled with particularity facts supporting [their] belief in the misleading nature of
the defendant[s'] statements.[43]

Indeed, in this type of case, what is important is that Plaintiffs' allegations "put defendants on

notice of precisely what they are alleged to have done wrong and permit them to defend against

the charge."[44]  Defendants should be put "on notice of the substance of [Plaintiffs'] claims."[45]

Ultimately, Plaintiffs should demonstrate that "the range, sources, and level of detail of the facts

alleged" show that their Complaint "is not frivolous or conclusory and deserves to proceed to the

next stage of litigation."[46]

　　　The Court finds that, taken as a whole, the facts alleged in the Complaint support a

reasonable belief that Plaintiffs' statements were false or misleading.

　　　First, the Court first finds that Plaintiffs have sufficiently pleaded a false or misleading

statement as to the 2005 SOX certifications.  Again, under the PLSRA Plaintiffs must only

specify each statement alleged to have been misleading, the reason or reasons why the statement

is misleading, and if an allegation regarding the statement or omission is made on information

and belief, the complaint must state with particularity all facts on which that belief is formed.

　　　Here, Plaintiffs have identified specific statements in the 2005 SOX certifications that

they allege to have been misleading.  Plaintiffs have further articulated their reasoning for why

---

[43]*Id.* at 1100.

[44]*Id.* at 1102.

[45]*Id.* at 1105.

[46]*Id.*

the statements were misleading, specifically, because Faggioli falsely asserted that he was unaware of fraud involving management or employees exercising significant control over financial reporting within NSP.  As to statements made on information and belief, the Court proceeds by addressing the factors set forth by the Tenth Circuit above.

Plaintiffs state, on information and belief, that Faggioli was, in fact, aware of, and involved with, a fraud involving the international operations of NSP.  Plaintiffs assert that Faggioli was involved in the alleged fraud identified by KPMG, which involved NSP's international operations.  While Plaintiffs do not go into great detail regarding the alleged fraud, they do assert that an alleged payment by Faggioli in violation of the FCPA was one aspect of the fraud.  Plaintiffs identify KPMG as the source for these facts.  KPMG's written statements indicate that a NSP special committee viewed certain electronic communications to reach the conclusion that Faggioli knew of the fraud.  KPMG, as an independent auditor of NSP, is a reliable source.

The Court acknowledges that it is unclear from KPMG's statements whether they specifically implicate Faggioli in the international operations fraud.  However, this is not fatal to Plaintiffs' Complaint.  Additional specificity as to this matter would likely only be available as a result of discovery.  Defendants are on notice of what Plaintiffs are asserting as well as the specific source from which Plaintiffs' assertions are based.[47]  Assuming Plaintiffs' interpretation of KPMG's statements is true, as the Court must at this stage, and taking the other facts alleged by Plaintiff in the Complaint as a whole, and assuming their veracity as well, a reasonable person

---

[47]To the extent that Defendants dispute the particularities of whether Faggioli only knew of, as opposed to participated in, the alleged international operations fraud, the Court finds that this is better resolved pursuant to summary judgment after some discovery.

would believe that the Defendants' statements in the 2005 SOX certifications were false or misleading.

Second, the Court finds that Plaintiffs have sufficiently pleaded a false or misleading statement as to the alleged false reassurances regarding NSP's financials. Plaintiffs have identified specific statements in the 8-Ks and press releases that they allege to have been misleading. Plaintiffs have articulated their reasoning for why the statements were misleading, specifically, because Faggioli knew from KPMG that the financials were not accurate.

As to statements made on information and belief, Plaintiffs allege that Faggioli knew that KPMG had raised material issues regarding the accuracy of the financial statements ending September 30, 2005, and that those issues precluded KPMG from completing a review and issuing an unqualified review for those statements. Plaintiffs also assert that Faggioli knew of the material fraud as of March 15, 2005. Again, Plaintiffs support this with KPMG's statements that Faggioli falsely represented that he was unaware of any relevant fraud on March 15, 2005. The Court finds that, assuming the veracity of these factual allegations, a reasonable person would believe that the Defendants' reassurances regarding NSP's financials were false or misleading.

In short, the Court finds that, while Plaintiffs' alleged facts are not seamless, taken as a whole, they support a reasonable belief that Defendants' statements, identified by Plaintiffs, were false or misleading. The level of detail is sufficient, as is the coherence and plausibility of the facts. Their underlying source—an independent auditor—is reliable.

b. Materiality

Defendants contest that Plaintiffs have adequately pleaded the materiality of the alleged false or misleading statements.  Defendants assert that Plaintiffs have not set forth anything regarding the amount of money involved in the alleged fraud or the payment that purportedly violated the FCPA.

Plaintiffs argue that a CEO's representations of his company's financial statements are material.  Plaintiffs also argue that when the information regarding the irregularities was released to the market, NSP's stock declined.  Finally, Plaintiff points to KPMG's March 31, 2006 letter stating that certain illegal acts appear to have had a material effect on the financial statements of NSP.

A statement is material if a reasonable investor would consider it important in determining whether to buy or sell stock.[48]  Moreover, "the materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock."[49]

The Court finds that the alleged misstatements were material in that an investor would consider them important in determining whether to buy or sell NSP stock.  Furthermore, upon NSP's March 20, 24 and 27, 2006 disclosures regarding the internal investigation, and immediate effects thereof, NSP's stock price declined significantly.

---

[48]*Grossman*, 120 F.3d at 1119.

[49]*Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000).

(ii) Scienter

Defendants argue that Plaintiffs fail to adequately allege scienter.  Defendants argue that Plaintiffs set forth no facts, other than KPMG's assertion that Faggioli knew of the alleged fraud, including who sent the information, when it was sent, or what the content of the message was. Defendants contend that Plaintiffs do not aver that Faggioli knew that failure to disclose the alleged fraud would mislead investors.  Defendants argue that Plaintiffs do not allege when Faggioli approved the allegedly illegal payment, and whether or how he knew it violated the FCPA.

Defendants argue that any stock sales by Faggioli are not sufficient to demonstrate scienter because they were not made at times and quantities that were suspicious.  Defendants assert Faggioli sold 32% of his holdings, and that they were sold at a temporal distance from the relevant NSP statements.

Plaintiffs respond that there is no requirement that they allege how Faggioli knew of the fraud, who sent him the information, when it was sent, and what its content was.  Plaintiffs point to KPMG's March 26, 2006 letter that states that Faggioli knew of a fraud, as per various electronic communications uncovered by a special committee, yet signed two management representation letters to KPMG to the contrary.[50]  Plaintiffs' general allegation is that, after fraud at NSP was discovered, NSP attempted to cover it up, pretend that no material errors had been detected, and to protect Faggioli.  Plaintiffs support this general allegation with the following specific allegations:

---

[50]CAC, at ¶ 90.

14

1.      Faggioli disregarded known contrary information when reassuring
        investors that NSP's financial statements were accurate;[51]

2.      NSP's March 20, and April 3, 2006 Form 8-Ks purposefully downplayed
        the magnitude of the irregularities;[52]

3.      KPMG's April 14, 2006 letter to the SEC stated that it disagreed with
        NSP's April 3, 2006 characterization of the financials;[53] and

4.      KPMG's April 14, 2006 letter asserts that KPMG disagreed with NSP's
        April 3, 2006 8-K which stated that Faggioli's continuing employment
        was consistent with a recommendation by independent investigators.
        KPMG indicates in the letter that, as per a special committee and
        independent investigators, Faggioli should be terminated.[54]

Plaintiffs also set forth the following regarding Faggioli's stock sales and their timing:

1.      Faggioli sold 46% and 74.1% of his NSP stock in December 2004 and
        September 2005, respectively;[55] no public evidence demonstrates that
        Faggioli sold any NSP stock prior to 2004, despite his being an officer
        since 1989;[56]

2.      a November 10, 2005 press release announced NSP was reviewing its
        financial statements concerning its foreign operations;[57]

3.      the December 2004 sale was made 10 weeks before Faggioli issued the
        false management representation letter to KPMG; and

-------

[51]*Id.* at ¶¶ 41, 54-55, 58-60, 61-77, 90, 92.

[52]*Id.* at ¶¶ 81, 93.

[53]*Id.* at ¶ 84.

[54]*Id.* at ¶ 95(b).

[55]*Id.* at ¶ 134.  Defendants argue that Plaintiff's September 2005 calculation improperly
excludes the value of Faggioli's stock options.  Including the options, the amount is 32%.

[56]*Id.* at ¶¶ 14-15.

[57]*Id.* at ¶¶ 54, 134.

4.      Faggioli's proceeds from 2004 and 2005 represented 179% and 396% of
his salary for those periods.

The PSLRA requires that, "with respect to each act or omission alleged to violate [the

Exchange Act], [the complaint] state with particularity facts giving rise to a strong inference that

the defendant acted [either recklessly or with the intent to defraud]."[58]  "When reviewing a

plaintiff's allegations of scienter under the PSLRA, a court should . . . examine the plaintiff's

allegations in their entirety . . . and determine whether . . . taken as a whole, [they] give rise to a

strong inference of scienter."[59]  A strong inference is a "conclusion logically based upon

particular facts that would convince a reasonable person that the defendant knew a statement was

false or misleading."[60]  Where there may be competing inferences, "we consider the inference

suggested by the plaintiff while acknowledging other possible inferences, and determine whether

plaintiff's suggested inference is 'strong' in light of its overall context."[61]  Where scienter is

based upon Defendants' non-disclosure of material facts, Plaintiffs must demonstrate that (1)

Defendants knew of the potentially material fact, and (2) Defendants knew that failure to reveal

the potentially material fact would likely mislead investors.[62]

The Court notes several circumstances which may indicate scienter, as indicated by

relevant case law.  Evidence that a defendant has taken steps to cover-up a misdeed is strong

---

[58]15 U.S.C.A. § 78u-4(b)(2).

[59]*City of Philadelphia v. Fleming Cos., Inc*., 264 F.3d 1245, 1258 (10th Cir. 2001).

[60]*Adams*, 340 F.3d at 1105.

[61]*Pirraglia v. Novell, Inc*., 339 F.3d 1182, 1187 (10th Cir. 2003).

[62]*City of Philadelphia*, 264 F.3d at 1261.

proof of scienter.[63]   Failure to take remedial actions requested by auditors contributes to the

inference that defendants knew that their statements were false or misleading when made.[64]   A

strong inference of scienter may be shown from insider trades at times and in quantities that were

suspicious in light of the insider's total stock holdings,[65] and considering whether the trades were

normal and routine and whether profits reaped were substantial in relation to compensation

levels.[66]

The Court finds that, examining Plaintiffs' allegations as a whole, Plaintiffs have met the

pleading requirements regarding scienter.   First, as discussed in more detail above, and based on

the supporting documentation by KPMG, there is strong inference that Faggioli knew of a

material fraud.   KPMG referred to electronic communications and an investigation by a special

committee at NSP that supported as much.   Considering subsequent events, in the light most

favorable to Plaintiffs—*e.g.*, that KPMG determined that the fraud appeared to be material, and

that disclosure of Faggioli's knowledge of the fraud and KPMG's inability to issue an

unqualified opinion caused a precipitous decline in stock price—the risk of misleading investors

was "so obvious that [Faggioli] must have been aware of it."[67]

---

[63]*SEC v. Lucent Tech., Inc.*, 363 F.Supp.2d 708, 717 (D.N.J. 2005); *Rocker Mgemt., LLC v. Lernout & Hauspie Speech Prod. N.V.*, No. 00-5965, 2005 WL 1365465, at *13 (D.N.J. Jun. 7, 2005).

[64]*In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2006 WL 3747560, at *22 (E.D. La. Dec. 14, 2006).

[65]*Sorkin v. Fischer Imaging Corp.*, No. 03-CV-00631, 2005 WL 1459735, at *11 (D. Colo. Jun. 21, 2005).

[66]*In re Qwest Comms. Int'l., Inc.*, 396 F.Supp.2d 1178, 1195 (D. Colo. 2004).

[67]*Fleming Cos.*, 264 F.3d at 1258 (quoting *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996)).

Moreover, the Court finds that Plaintiffs have set forth factual allegations which support that NSP took steps to cover-up a misdeed, failed to take remedial actions requested by KPMG, and that suspicious insider trades took place.

With respect to the alleged cover-up, Plaintiffs cite specific KPMG statements which dispute NSP's characterization of the effect of the alleged fraud.  Moreover, Plaintiffs cite to KPMG's statements protesting the measures taken by NSP to remedy the effects of the alleged fraud.

As to Faggioli's stock trades, the Court finds that Plaintiff has pleaded sufficient facts which, if true, support that Faggioli's trades were at times and in quantities that were suspicious in light of his total stock holdings, that the trades were not normal and routine, and that profits reaped were substantial in relation to compensation levels.  For example, Plaintiffs allege that Faggioli had not traded previous to the time period in question, despite having been CEO for many years.  Moreover, it is alleged that Faggioli traded in significant quantities of stock during the period—between 32% and 74% of his total holdings.  Finally, Plaintiffs have alleged that the proceeds from Faggioli's sales were significantly greater than his contemporaneous salary levels.

While each of the above indicia may or may not, in and of themselves, be sufficient to establish a strong inference of scienter, taken as a whole, and combined with the Court's other findings, as set forth above, the factual allegations support a reasonable belief of Defendants' knowledge of false or misleading statements that were either reckless or intended to defraud.

(iii) Remaining elements

The remaining elements of the 10b-5(b) claim are not in dispute, and, therefore, the Court does not address them.

## 2. Rule 10b-5(a) and (c) Claim

Defendants make many of the same objections to Plaintiffs' Rule 10b-5(a) and (c) claim as they do to Plaintiffs' Rule 10b-5(b) claim.  Indeed, the elements of the two claims are quite similar,[68] and Plaintiffs appear to rely on the same essential factual allegations for their 10b-5(a) and (c) claim as support their 10b-5(b) claim.  The general provisions of Rule 10b-5(a) and (c) prohibit the use of "any device, scheme, or artifice to defraud" or the participation "in any act, practice, or course of business" that would perpetrate fraud on investors.  In jurisdictions where a cause of action under these provisions has been recognized, to state a claim a "plaintiff must allege that a defendant (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries."[69]

Defendants argue that Plaintiffs' cause of action under 10b-5(a) and (c) has not been recognized by the Tenth Circuit.  Defendants argue that the theory is inconsistent with Tenth Circuit case law.[70]  Moreover, Defendants appear to argue that, even if the cause of action were valid, Plaintiffs have not alleged any misstatement before March 15, 2005, and that, therefore, Plaintiffs' claim is lacking in particularity and cannot apply to the beginning of the class period—April 23, 2002.

---

[68]Where the cause of action has been recognized, the only difference between the elements appears to be that the 10b-5(a) and (c) claims do not require an untrue statement. *CompuDyne Corp. v. Shane*, 453 F.Supp.2d 807, 821 (S.D.N.Y. 2006).

[69]*In re Parmalat Sec. Litig.*, 376 F.Supp.2d 472, 492 (S.D.N.Y. 2005); *accord Shriners Hosp. for Children v. Qwest Commc'n Intern. Inc.*, No. 04-CV-0781, 2005 WL 2350569, at *6 (D. Colo. Sept. 23, 2005).

[70]Defendants cite *Anixter*, 77 F.3d at 1224, in support.

Plaintiffs assert that "[t]he appropriate level of particularity for the 10b-5(a) and (c) claims is that plaintiffs must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on investors in the securities at issue."[71]  Plaintiffs argue that they have adequately pleaded Faggioli's scheme to conceal a fraud and deceive KPMG so as to obtain unqualified or "clean" audit opinions and prop up NSP's stock price.  Plaintiffs also argue that the class period of their claim may precede the date of the first alleged deceptive act.  Plaintiffs cite *In re Enron Corp*,[72] to support this proposition.

Defendants reply that *In re Enron* was reversed by the Fifth Circuit in *Regents of the University of California v. Credit Suisse First Boston (USA), Inc.*[73]

The Court recognizes that Rule 10b-5(a) and (c) scheme liability is somewhat novel. However, the Court does not read Tenth Circuit law to preclude the cause of action.  In the case of *Anixter v. Home-Stake Production Co.*, the Tenth Circuit noted that §10b "'prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act.'"[74] The Court believes that a Rule 10b-5(a) and (c) cause of action falls within these parameters. Nonetheless, the Court finds that Plaintiffs have not pleaded their cause of action with particularity back to the beginning of their proposed class—April 23, 2002.  Plaintiffs themselves

---

[71]*In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 439 F.Supp.2d 692, 722 (S.D. Tex. 2006).

[72]*In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F.Supp.2d 549, 705 (S.D. Tex. 2002).

[73] No. 06-20856, 2007 WL 816518 (5th Cir. Mar. 19, 2007).

[74]77 F.3d at 1224 (citing *Central Bank of Denver*, 511 U.S. 164 (1993)).

characterize the alleged fraud as "Faggioli's scheme to conceal a fraud and deceive KPMG so as to obtain unqualified or 'clean' audit opinions and prop up NSP's stock price."   Faggioli became CEO in November 24, 2003, KPMG was not NSP's auditor until July 8, 2002, and Plaintiffs' first allegation of deception occurs on March 15, 2005.  Plaintiffs have not pleaded particularized supporting facts that would support a reasonable belief of scienter, or the other elements of the cause of action prior to this date.  Plaintiffs may not avoid the requirements of the PSLRA in this instance to maintain a class period extending back to April 23, 2002.

As discussed above, pursuant to Plaintiffs' claim under Rule 10b-5(b), Plaintiffs have met the relevant pleading requirements for a class period beginning March 15, 2005.  Because of the other pleading deficiencies that exist for Plaintiffs' claims prior to this date, Plaintiffs' reliance on *In re Enron Corp.* is inapposite.  Accordingly, the Court finds that Plaintiffs have stated a Rule 10b-5(a) and (c) claim only for a period beginning March 15, 2005.

C.  Control Person Liability

Defendants argue that Plaintiffs' Complaint does not state a claim for control person liability.

Section 20(a) of the Exchange Act states:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be jointly and severally with and to the same extent as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the acts or acts constituting the violation or cause of action.[75]

---

[75]15 U.S.C. § 78t(a).

21

To state a prima facie case of control person liability under Section 20(a) of the Exchange Act, Plaintiffs must establish "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."[76]

Defendants argue that Plaintiffs have failed to establish a primary violation of the securities laws. As discussed above, Defendants' argument fails. Plaintiffs have adequately pleaded a primary violation of the securities laws. Defendants also argue that Plaintiffs have set forth no allegation that Cristiani, an outside director, exerted control or influence over the day-to-day operations of NSP. Finally, Defendants argue that Huff's position as NSP's CFO is not sufficient to show that he exercised control over the alleged misrepresentations.

Plaintiffs argue that they have alleged control person liability over Cristiani because such liability exists where a defendant possesses the power, directly or indirectly, to direct or cause the direction of management and policies of the primary violator. Plaintiffs contend Cristiani is NSP's Audit Committee Chairman, with power to direct the management and policies of NSP related to accounting and auditing, during the relevant period.[77] Plaintiffs also argue that control can be demonstrated by influence over or involvement in wrongdoing.[78] Plaintiffs emphasize KPMG's statement from the March 27, 2006 letter to the SEC that Cristiani, in addition to Faggioli, was aware of the alleged fraud and that, in his words, could be considered material from an auditing standpoint and could be a significant problem to NSP. Plaintiffs assert that,

---

[76]*City of Philadelphia*, 264 F.3d at 1270.

[77]CAC, at ¶¶ 16-17.

[78]Plaintiffs cite *Gubka v. WebAccess, Inc.*, 445 F.Supp.2d 1259, 1268-69 (D. Colo. 2006) (implying liability may be imposed if Plaintiffs can demonstrate participation, with scienter, in the allegedly fraudulent misrepresentations) in support of this proposition.

despite this knowledge, Cristiani did not correct Faggioli's incorrect management representations to KPMG.[79]

Plaintiffs assert that Huff exercised control over the alleged misrepresentations and exerted control and influence over the day-to-day operations of NSP.  Plaintiffs assert that, as CFO, Huff was responsible for accounting and financial reporting, signed all of the 2005 SOX certifications at issue,[80] and issued, with Faggioli, the false and misleading reassurances that the financial statements were accurate.[81]  Plaintiffs assert that Huff was fired as a result of the fraud,[82] and sold significant amounts of stock prior to discovery of the fraud.[83]

The Court finds that Plaintiffs have adequately pleaded control person liability for Cristiani and Huff.  As previously noted, liability may be imposed where a defendant possesses the power, directly or indirectly, to direct or cause the direction of management and policies of the primary violator.[84]  Plaintiffs' factual allegations assert that, as NSP's Audit Committee Chairman, Cristiani had power to direct the management and policies of NSP related to accounting and auditing, during the relevant period.  Moreover, Huff, as CFO responsible for the financial reporting which is the subject matter of the alleged primary violation, is a control

---

[79]CAC, at ¶ 90.

[80]*Id.* at ¶ 35, 37, 39, 47, 48, 50, 51, 61, 65.

[81]*Id.* at ¶¶ 54, 58, 72, 93, 123-24.

[82]*Id.* at ¶¶ 123-24.

[83]*Id.* at

[84]*Adams*, 340 F.3d at 1108.

person.[85]  The Court need not address these individuals' alleged involvement in the primary

violation to find properly pleaded control person liability.

### III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion to Dismiss (Docket No. 88) is GRANTED IN

PART and DENIED IN PART.  Defendants' Motion is GRANTED in that Plaintiffs' Rule 10b-

5(a) and (c) claims are dismissed as they relate to the class period pre-dating March 15, 2005.

Defendants' Motion is DENIED in all other respects.

SO ORDERED.

DATED   May 21, 2007.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[85]*Id.* at 1109.