IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN RE NATURE'S SUNSHINE PRODUCTS SECURITIES LITIGATION | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br> Case No. 2:06-CV-267 TS |

This matter comes before the Court on Defendants' Motion to Dismiss Scheme Liability Claim. Defendants seek dismissal of Plaintiffs' Second Claim for Relief. That claim is prefaced on a scheme whereby Defendant Faggioli made alleged false statements in management representation letters to Defendant NSP's independent auditors KPMG in order to obtain a clean audit. Defendants argue that this cause of action must be dismissed because the contents of the management representation letters were not made public. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

In their Motion for Class Certification, Plaintiffs sought certification for two dates: March 16, 2005, to April 5, 2006, for their First Claim for Relief; and March 15, 2005, to April 5, 2006,

1

for their Second Claim for Relief. In relation to the Motion for Class Certification, Defendants argued that the March 15, 2005 date was inappropriate, arguing Plaintiffs may not maintain their scheme claim under the Supreme Court's recent decision in *Stoneridge Investments Partners, LLC v. Scientific-Atlanta, Inc.*[1] While couched as a challenge to the beginning class date, Defendants argument actually sought dismissal of Plaintiffs' scheme claim. The Court requested further briefing on this issue. Defendants have now moved to dismiss Plaintiffs' scheme liability claim.

## II.  RULE 12(b)(6) STANDARD

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the nonmoving party.[2] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[3] All well-pleaded factual allegations in the Amended Complaint are accepted as true and viewed in the light most favorable to the nonmoving party.[4] But, the court "need not accept conclusory allegations without supporting factual averments."[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

---

[1] --- U.S. ---, 128 S.Ct. 761 (2008).

[2] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[3] *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1974 (2007) (dismissing complaint where Plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[4] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[5] *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]  Thus, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[7]

III.  DISCUSSION

Defendants' Motion is based on the Supreme Court's recent decision in *Stoneridge Investments Partners, LLC v. Scientific-Atlanta, Inc*.  In *Stoneridge*, the Court considered "when, if ever, an injured investor may rely upon § 10(b) to recover from a party that neither makes a public misstatement nor violates a duty to disclose but does participate in a scheme to violate § 10(b)."[8]  In that case, investors in Charter Communications brought suit under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder against "entities [Scientific-Atlanta, Inc. and Motorola, Inc.] who, acting both as customers and suppliers, agreed to arrangements that allowed the investors' company to mislead its auditor and issue a misleading financial statement affecting the stock price."[9]  The Court concluded that the implied right of action found in Section 10(b) and Rule 10b-5 did "not reach the customer/supplier companies because the investors did not rely upon their statements or representations."[10]

---

[6]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[7]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8]*Stoneridge*, 128 S.Ct. at 767.

[9]*Id*. at 766.

[10]*Id*.

The Court found that Scientific-Atlanta and Motorola "had no duty to disclose; and their deceptive acts were not communicated to the public."[11]  Further, no member of the investing public had knowledge, either actual or presumed, of Scientific-Atlanta's or Motorola's deceptive acts during the relevant times.[12]  As a result, the Court held that the investors could not show reliance upon any of the companies' actions "except in an indirect chain that we find too remote for liability."[13]

A number of courts have had the opportunity to review the Court's decision in *Stoneridge*.  The Seventh Circuit recently addressed *Stoneridge* in *Pugh v. Tribune Company*.[14]  In that case, the court affirmed the dismissal of a securities class action brought by investors against Tribune, certain executive officers, and certain employees.  The court's discussion of *Stoneridge* centered around defendant Sito.  The court found that "[l]ike the defendants in *Stoneridge*, Sito participated in a fraudulent scheme but had no role in preparing or disseminating Tribune's financial statements or press releases."[15]  Additionally, there was no allegation that Tribune investors were ever informed of certain false certifications that Sito made.[16]  As a result, the court found no viable claim against Sito.

---

[11]*Id*. at 769.

[12]*Id*.

[13]*Id*.

[14]521 F.3d 686 (7th Cir. 2008).

[15]*Id*. at 697.

[16]*Id*.

4

Similarly, in *Katz v. Image Innovations Holdings, Inc.*,[17] the court found that dismissal of certain individuals was necessary because of *Stoneridge*.  The court found that the amended complaint in that case did not allege how the actions of these individuals were relied upon by investors.[18]  Thus, the plaintiffs' claims were dismissed against those individuals.  The court did not, however, dismiss claims against individuals who had signed allegedly fraudulent financial statements that were disseminated to the public as part of SEC filings.[19]

The court in *In re DVI Inc. Securities Litigation*,[20] addressed scheme liability against DVI's corporate counsel, Clifford Chance.  Plaintiffs alleged that Clifford Chance attained knowledge of DVI's financial situation and substantially assisted in all elements of its fraudulent scheme, including drafting fraudulent public financial reports, making fraudulent disclosures related to DVI's internal controls, and deflecting inquires from the SEC.[21]  Plaintiffs argued that Clifford Chance should be held liable because he participated in a scheme to defraud investors.[22] Plaintiffs argued that Clifford Chance's unique role in initiating and masterminding certain aspects of the scheme was sufficiently related to the injury of the investors to satisfy the reliance element.[23]  The court, relying on *Stoneridge*, disagreed.  The court found that although the

---

[17]542 F.Supp. 2d 269 (S.D.N.Y. 2008).

[18]*Id*. at 272–73.

[19]*Id*. at 273.

[20]249 F.R.D. 196 (E.D. Pa. 2008).

[21]*Id*. at 199.

[22]*Id*. at 217.

[23]*Id*.

plaintiffs "allege that Clifford Chance knew of the scheme, and at times took a more active part in assisting DVI in the scheme, the fact remains that none of this alleged conduct was publically disclosed such that it affected the market for DVI's securities."[24]  Thus, the court found that plaintiffs have failed to show that investors relied upon the allegedly deceptive conduct of Clifford Chance.[25]

Plaintiffs seeks to distinguish *Stoneridge* and the cases following it, arguing that Defendants here are "primary" actors, rather than "secondary" actors.  It is true that those individuals involved in the cases discussed above played less active roles than Plaintiffs allege Defendant Faggioli did here.  However, it is not the distinction between "primary" actors and "secondary" actors that is important.  Rather, in the cases set forth above, it was the plaintiffs' inability to show reliance, which is an essential element to § 10(b) private causes of action,[26] that resulted in dismissal.  In those cases, the plaintiffs failed to show that the alleged misconduct had been made public and, therefore, could have relied upon by investors.  Plaintiffs seem to recognize this, stating that the "distinguishing factor has been whether the subject defendant has made any public statements in connection with the scheme upon which investors are alleged to have relied."[27]

---

[24]*Id*. at 218.

[25]*Id*.

[26]*Stoneridge*, 128 S.Ct. at 769.

[27]Docket No. 159, at 8.

Plaintiffs rely upon the recent decision of *In re Bristol Myers Squibb Co. Securities Litigation*,[28] in support of their argument that their Second Claim for Relief should not be dismissed. The relevant portion of that decision concerned Defendant Bodnar who was Bristol-Myers' Senior Vice President for Strategy and Medical and External Affairs and a member of the company's Executive Committee.[29] Bodnar was the lead representative in settlement negotiations between Bristol-Myers and Apotex over Bristol-Myers' blood-thinning medication Plavix.[30] The plaintiffs in that case challenged the adequacy of Bristol-Myers' public disclosures relating to those settlement discussions.[31] Defendant Bodnar sought dismissal of the claims against him under *Stoneridge*.

The court refused to dismiss the claims against Bodnar, finding that Bodnar's behavior was at the heart of Bristol-Myers' false and misleading conduct.

> It is neither implausible, nor too remote to find that the investing public relied on the announcement of the Apotex litigation settlement in deciding whether or not to invest in Bristol-Myers stock, and Bodnar was directly responsible for the settlement agreements. Bodnar made no public statements himself, but investors relied on his good faith in negotiating the Apotex settlement agreements and committing the Company to its terms. Furthermore, unlike in *Stoneridge* where the defendants' "deceptive acts were not communicated to the public," *Bodnar's misconduct and deceptive acts were communicated to the public here through the disclosure of the regulatory rejection of the settlement, the disclosure of the amended settlement's terms, and the revelation of the secret oral side agreements.* Bodnar's actions are directly tied to the Apotex settlement, the Justice Department investigation, and the alleged misstatements and omissions. These allegations are

---

[28] 2008 WL 3884384 (S.D.N.Y. Aug. 20, 2008).

[29] *Id.* at *1.

[30] *Id.*

[31] *Id.*

more than adequate to satisfy 10(b) and the requirements of the *Stoneridge* decision.[32]

Here, Plaintiff's Second Claim for Relief revolves around a scheme by which Defendants sought to obtain a clean audit from their auditor KPMG.  In order to obtain a clean audit, Defendant Faggioli made allegedly false statements in management misrepresentations letters to KPMG.  The situation before the Court resembles those in *Pugh*, *Katz*, and *DVI*.  In each of those cases, as here, the defendants were alleged to have been involved in the fraudulent activity.  However, because their conduct was not publicly disclosed, there could be no reliance.  *Bristol-Myers* is distinguishable because Defendant Bodnar's deceptive acts were communicated to the public.  That is not the case here.  There is no allegation that the statements made by Defendant Faggioli in the management representation letters were ever publicly disclosed.  As a result, Plaintiffs cannot show reliance on those statements.  Based on the above, the Court finds that Plaintiffs' Second Claim for Relief must be dismissed.  The Court wishes to stress that Plaintiffs' First Claim for relief, which is based on alleged false statements that were made public, remains.  This ruling only addresses the alleged false statements made by Defendant Faggioli in the management representation letters because those letters were not made public.

---

[32]*Id*. at *20 (quoting *Stoneridge*, 128 S.Ct. at 769) (emphasis added).

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 156) is GRANTED.

DATED   September 23, 2008.

                BY THE COURT:

                _____
                TED STEWART
                United States District Judge