Phillip Kim (admitted *pro hac vice*)
Laurence M. Rosen (admitted *pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
350 Fifth Avenue, Suite 5508
New York, New York  10118
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

Lead Counsel for Plaintiffs

Mark F. James (5295)
Gary A. Dodge (0897)
**HATCH, JAMES & DODGE, P.C.**
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Liaison Counsel for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NATURE'S SUNSHINE PRODUCTS SECURITIES LITIGATION, <br><br> This Document relates to: All Actions. | MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT <br><br> MASTER FILE NO. 2:06CV00267 TS <br><br> (Consolidated with 2:06cv00287 DB, 2:06cv00311 DAK, 2:06cv00350 BSJ and 2:06cv00442 DB) <br><br> Judge Ted Stewart <br><br> Magistrate Judge Samuel Alba |

**INTRODUCTION**

Following arm's-length mediation and settlement discussions, previously-appointed class representatives Rick Kader, Loh Chee Kuang, and Peter Rathmann ("Plaintiffs") and the defendants, Nature Sunshine Products, Inc. ("NSP" or the "Company"), Douglas Faggioli, Craig Huff, and Franz Cristiani (collectively the "Defendants") agreed to settle this securities fraud class action for six million dollars ($6,000,000.00), in cash through the Stipulation of Settlement filed with the Court on September 14, 2009, docket no. 206 (the "Stipulation" or "Settlement Agreement"). On October 8, 2009 the Court entered an order preliminarily approving the Settlement Agreement, preliminarily certifying the Settlement Class, approving the form and manner dissemination of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), and scheduled the final Settlement Hearing for February 9, 2010 at 2:00 p.m. (the "Preliminary Approval Order").

In accordance with the Preliminary Approval Order, the Claims Administrator, Strategic Claims Services. ("SCS"), has mailed 14,744 copies of the Notice and Proof of Claim forms, published the Summary Notice in *Investor's Business Daily,* transmitted it over *Marketwire,* and made the Notice and Proof of Claim Forms publicly available on SCS's website. *E.g.,* Declaration of Phillip Kim, submitted herewith ("Kim Decl."), ¶¶67-70, Ex. 1.

Confirming the reasonableness and fairness of the Settlement, is the fact that not a single Settlement Class Member has objected to any aspect of the Settlement. Additionally, no Settlement Class Member had validly sought to be excluded (opt-out) from the Settlement.[1] In

---

[1] As the SCS notes, a purported request for exclusion was submitted by Radfdaele G. Fazio on behalf of Koch Industries, Inc. ("Koch") on December 3, 2009. However, this request for exclusion is not a valid request for exclusion within as required by the Notice and the Preliminary Approval Order, because the request for exclusion did not mention Koch's purchases and sales during the Settlement Class Period. Even after being advised that the request

short, since the entry of the Preliminary Approval Order, there have been no factual or legal developments that weigh against final approval.

The Settlement should be finally approved because it provides Settlement Class Members with an immediate, certain and guaranteed recovery, without the risk and delay that would accompany continued litigation. *E.g.,* Kim Decl., ¶¶43-53. The Plan of Allocation, which governs the distribution of the Net Settlement Fund, is rationally based on the allegations of the operative Consolidated Amended Class Action Complaint docket no. 85, and is based upon consultation of Plaintiffs' Counsel's financial damages expert and in light of the Court's ruling on Defendants' motions to dismiss. *E.g.,* Kim Decl., ¶¶71-74. Accordingly, as explained in detail below, the Court should finally approve the Settlement.

## STATEMENT OF FACTS

Plaintiffs' Counsel respectfully refers the Court to the Kim Declaration for the relevant factual background.

## ARGUMENT

**I. THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT**

It is well settled that courts favor private settlement of litigation. *See Desktop Direct, Inc.* v. *Digital Equip. Corp.,* 993 F.2d 755, 758 (10th Cir. 1993), *aff'd,* 511 U.S. 863 (1994) (agreeing that "encouragement of out-of-court settlements is desirable"); *Wilkerson* v. *Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D. Colo. 1997). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical duration of the litigation. It is beyond question that "there is an overriding public interest in

---

for exclusion was invalid because of this deficiency, Mr. Fazio refused to provide the requested information to SCS and stated that he was not even sure if Koch had purchased NSP stock during the Settlement Class Period. Therefore, Koch's request for exclusion is invalid and should be rejected. *See* Kim Decl., Ex. 1, ¶10 thereto.

settling and quieting litigation," and this is "particularly true in class actions suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In this Circuit, a class action settlement is entitled to final approval under Rule 23(e) of the Federal Rules of Civil Procedure where it is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) ("the trial court must approve the settlement if it is fair reasonable and adequate."). In both *Gottlieb* and *Jones*, the Tenth Circuit identified four factors that a district court should consider in addressing whether a proposed class action settlement if fair, reasonable, and adequate (the "Jones Factors"):

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery out-weighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb*, 11 F.3d at 1014, *Jones*, 741 F.2d at 324; *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 180, 1188 (10th Cir. 2002) (affirming test).

The district court exercises its "sound discretion" in approving a settlement, *Jones*, 741 F.2d at 324, when deciding on whether the recovery achieved is reasonable, balancing the potential rewards of continued litigation against the risk of recovering less or nothing at all. But as the Supreme Court explained, courts should not adjudicate the merits or the case, nor substitute their judgment for that of the parties who negotiated the settlement. *Carson v. Amer.*

*Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); *see also Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273,284 (D. Colo. 1997); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not decide the merits of the controversy.").

The above factors require the Court to decide whether the proposed settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989) ("[T]he essence of settlement is compromise. Compromise involves the moderation of lofty and idealized hopes and the relinquishment of unyielding and absolute positions."). Rather than conduct an extended inquiry into the claims asserted, courts examine the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick*, 698 F.2d 61 ,74 (2d Cir. 1982). Indeed, where as here, experienced counsel support the settlement, their opinions are entitled to considerable weight. *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).

The Settlement satisfies each of the *Jones* factors. As discussed below, the Settlement was the result of fair and honest arm's-length negotiations. The Action presents serious questions of law that place the outcome of the litigation in doubt. The substantial value of the immediate recovery to the Class outweighs the mere possibility of future relief after protracted and expensive litigation, and the Settlement is fair and reasonable in the judgment of the parties. Accordingly, the Settlement is fair, reasonable, and adequate and should be approved.

### A. The Settlement Was Fairly And Honestly Negotiated

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may

have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.,* 2008 WL 384579, at *5 (D. Colo. Feb. 11,2008) (quoting *Malchman v. Davis,* 706 F.2d 426,433 (2d Cir. 1983)).

This Settlement is the product of hard fought negotiations before a nationally regarded *JAMS* mediator David Geronemus. *E.g.,* Kim Decl., ¶7, Ex. 2. The arm's length negotiations between Plaintiffs' Counsel and Class Representative Rick Kader[2] on one hand, and Defendants' Counsel, NSP's General Counsel, and NSP's insurer's counsel on the other hand, were all conducted by capable counsel on both sides who are well experienced in securities class actions. While a settlement was reached during the mediation, hard fought negotiations continued for several months thereafter as the parties negotiated the specific terms of the settlement which ultimately culminated in the Settlement Agreement. *See* Kim Decl., ¶¶54-62. Plaintiffs' Counsel were in a position to critically assess the litigation, as they had completed extensive motion practice, obtained class certification, had been involved in numerous discovery disputes, reviewed nearly 500,000 pages of documents obtained through discovery from the Company, its former auditor, other third parties, and Plaintiffs' Counsel's own investigation, deposed five key witnesses from the Company and its former auditor, and consulted with accounting and damages experts. *E.g.,* Kim Decl., ¶5. As such, Plaintiffs' Counsel possessed the "desired quantum of information necessary to achieve a settlement." *Cotton v. Hinton*, 559 F .2d 1326, 1332 (5th Cir. 1977); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *see also In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260 (D. Kan. 2006) (approving settlement reached after parties had briefed class certification and begun discovery).

---

[2]   Mr. Kader attended the mediation and participated in the negotiations as a representative of the Class and the other Class Representatives.

Accordingly, the Settlement was fairly and honestly negotiated after sufficient discovery, and there is no evidence of collusion, and this Court should finally approve the settlement.

### B. There Are Serious Questions Of Law And Fact About The Outcome Of The Litigation

The second *Jones* factor - whether "serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt" - also supports the approval of the Settlement. Plaintiffs believe they would ultimately prevail at trial. Nonetheless, as discussed in greater detail in the Kim Declaration ¶¶43-53, Plaintiffs' Counsel realized that they faced numerous risks and uncertainties, including the risk that the Court would grant summary judgment in this action. Moreover, Plaintiffs' Counsel was aware that many other securities class actions had been prosecuted through summary judgment and trial, only to be overturned on appeal.[3]

Plaintiffs faced serious challenges in proving scienter. Defendants have maintained all along that that none of their allegedly false statements were made knowingly or with deliberate recklessness. By definition, proving another's mental state of mind is a difficult task, as there is rarely ever a *Perry Mason*-type moment, i.e., a defendant admits to committing a fraud. Defendants maintained that there was no fraudulent intent because the statements made by KPMG--that certain of the defendants' statements were knowingly false--were made in the midst of the Company's internal investigation. Defendants strongly maintained that once the internal investigation was completed, the internal investigation found no evidence of a knowing fraud. Kim Decl., ¶¶45-48.

---

[3] Other plaintiffs have won huge judgments at trial, only to lose on appeal. *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (lst Cir. 1990) (en banc) (action dismissed following 11 years of litigation and a $30 million judgment for plaintiffs following trail that was largely affirmed by the first appellate panel); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979); *Piper v. Chris-Crajft-Indus., Inc.*, 430 U.S. I (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,973,365 after eight years of litigation).

Moreover, while the Company ultimately issued restated financial statements, a material portion of the restatement adjustments involved complex tax accounting, which could have supported Defendants' position that at most the accounting errors amounted to negligence or gross negligence—not fraud. Moreover, the tax accounting errors also raised questions of materiality. While Plaintiffs believed that other facts demonstrated Defendants' fraudulent intent and knowledge, Plaintiffs recognized that this issue posed a significant risk at summary judgment and at trial and that there was no guarantee that Plaintiffs would prevail. *Id.*; *see In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008) (noting that scienter presents difficult questions of proof).

Plaintiffs recognized the risk in proving loss causation and damages. *See* Kim Decl., ¶50-51. The issue of loss causation and the ultimate measure of damages would have been the subject of the proverbial "battle of the experts" at trial, with no guarantee that the jury would credit Plaintiffs' expert over the Defendants'. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non actionable factors…"); *In re RJR Nabisco Inc. Sec. Litig.*, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992)(measure of damages is "subject of dispute between experts, a dispute whose outcome is impossible for [the Court] to predict").

The Settlement eliminates these risks and the consequent expensive and protracted litigation that would follow and provides Class Members with ad immediate and guaranteed recovery. Therefore, this factor more than supports final approval of the Settlement. *See In re*

*Qwest Comm 'ns Intern'l Inc. Sec. Litig.,* 2009 WL 1492710, at *4 (D. Colo. May 27, 2009) ("doubt augurs in favor of settlement because settlement creates a certainty of some recovery.").

### C. The Value Of An Immediate Recovery Outweighs The Possibility Of Relief After Protracted And Expensive Litigation

The third *Jones* factor, i.e., whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, further supports the approval of the Settlement. The monetary value of the Settlement must be compared to "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. The Settlement Fund of $6 million is more than sufficient, when weighed against costly and time-consuming litigation that would ensue absent settlement.

The $6 million is well-within the reasonable range of adequate securities fraud settlements. Plaintiffs' *best case scenario of damages* (assuming that Defendants' much lower estimate of damages was wholly rejected and Plaintiffs won on every point), was $42.7 million. The $6 million settlement represents 14.1% of Plaintiffs' *best case scenario.* Kim Decl., ¶¶9, 51. A 14.1% recovery of Plaintiffs' best possible outcome is a great result and is well above the range of settlements of this type. According to statistical report issued by NERA: Recent Trends in Securities Class Action Litigation 2009 Year-End Update, December 2009,[4] the median settlement value for securities class actions was $9 million. However, 52% of settlements were for less than $10 million. For cases with investor losses up to $100 million, the ratio between the settlement amount and investor losses range from 2% to 5.1%. *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses). Here, the Settlement represents 14.1% of maximum damages.

---

[4]   *See* http://www.nera.com/image/Recent_Trends_Report_01.10.pdf.

When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the Settlement reached in this case surpasses even the very high end of that range. *See In re Warfarin Sodium Antirust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004); *see, also, Officers for Justice,* 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.") (citation omitted); *In re AT&T Corp*, 455 F.3d 160, 170 (3d Cir. 2006) ("'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean the proposed settlement is grossly inadequate and should be disapproved. Rather, the percentage of recovery must represent a material percentage of recovery in light of all risks considered….'").

Additionally, like all complex class cases, litigating this case through trial would be costly, time-consuming and present a risk that the Settlement Class could walk away empty-handed. *See Omnivision,* 559 F. Supp. 2d at 1041-42. When deciding whether to settle this case, Lead Counsel considered, among other things, the inherent complexities of securities fraud cases, the cost and delay from continued litigation, and the strengths and the weaknesses of the Settlement Class's claims. When considered against these inherent uncertainties, settlement is an attractive option. *See Sprint,* 443 F. Supp. 2d at 1261. As one court aptly observed, it is sometimes better "to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974) (citations and internal quotation marks omitted).

### D. Counsel Believes That The Settlement Is Fair And Reasonable

This case had been litigated by experienced and competent counsel on both sides. Defendants were led by Parsons Behle & Latimer and their co-counsel Morgan Lewis and

Bockius, LLP are nationally recognized with an abundance of experience in this type of litigation. Likewise, Plaintiffs' Counsel has many years of experience in litigating securities fraud class actions and other complex litigations throughout the country. *See* Kim Decl., ¶¶ 54-63, Exs. 3-5. As noted above, the Settlement was aggressively negotiated by both sides before a neutral mediator.

Thus, experienced counsel and negotiating at arm's-length have weighed the above factors in the context of this case and recommend the Settlement. As courts have stated, the view of the attorneys' actively conducting the litigation, while not conclusive, "is entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis* v. *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Ashley v. Regional Transp. Dist. & Amalgamated Transit Union Div.*, 2008 WL 384579, at * 7 (D. Colo. Feb. 11, 2008).

### E.  The Reaction of the Class Supports Approval of the Settlement

Pursuant to the Court's Preliminary Approval Order, over 14,000 copies of the Notice were sent to Class Members and sophisticated institutional investors believed to have purchased NSP stock during the Class Period, and the Summary Notice was published in *Investors' Business Daily* and electronically over the *Marketwire*. *See* Kim Decl., ¶¶64-66, Ex. 1. The time period to object to the Settlement or seek exclusion passed on January 26, 2010. To date, no objection has been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement. Nor have there been any valid requests for exclusion. *Id.* "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon* v. *Chrysler Corp.*, 150

F.3d 1011, 1027 (9th Cir. 1998); *see, also*, *Mego Fin. Corp Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

## II. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole - the plan must be fair, reasonable, and adequate. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Law v. NCAA,* 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000). The allocation formula need only have a reasonable and rational basis, particularly if recommended by experienced and competent counsel, as it is here. *See In re Am Bank Note Holographics, Inc., Sec. Litig.,* 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (approving allocation plan and according counsel's opinion "considerable weight" because there were "detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery"); *accord In re Global Crossing Sec. & ERISA Litig.* 225 F.R.D. 436, 462 (S.D.N.Y. 2004). The Plan satisfies this standard and the Court should not hesitate to approve it.

Lead Counsel developed the Plan based, on among other things, the allegations in the Complaint, the analysis of its financial damages expert Scott Hakala, Ph.D, and the and the law of loss causation articulated in *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005). *See* Kim Decl., ¶¶71-74. Consistent with *Dura,* 544 U.S. at 347 (no damages until the truth becomes known), the Plan compensates those Settlement Class Members who actually sustained damage, *i.e.* eliminates in-and-out purchases, those shares bought and sold, prior to the truth being revealed during the Settlement Class Period.

Additionally, because the Court dismissed with prejudice the claims on behalf of the earlier class period, April 23, 2002 through March 15, 2005, it was determined that only a small portion of the Settlement Fund should be allocated to this class period. Therefore, taking in consideration that the Court had dismissed these claims, the Plan of Allocation recognizes as compensable damages only 2% of the decrease in the value of Nature's share price resulting from the disclosure of the news related to the alleged fraud for the shareholders who purchased their shares during the period from April 23, 2002 through March 15, 2005. Kim Decl., ¶73.

In short, the Plan has a rational basis, Plaintiffs' Counsel believes that it fairly compensates the Settlement Class, and this Court should approve it. *See Global Crossing,* 225 F.R.D. at 462 ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis.") (citation omitted); *accord Sprint,* 443 F. Supp. 2d at 1262.

## III. THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

An extensive notice program, by mail and by means of publication, has been completed by Plaintiffs. The Court approved the notice procedures in the Preliminary Approval Order.

As a result, over 14,000 copies of the Notice describing the Settlement terms, the Plan of Allocation, and the Settlement Hearing were mailed to potential Settlement Class Members. The Summary Notice was also timely published in *Investor's Business Daily* and *Marketwire*. *See* Kim Decl., Ex. 1.

This notice program was tailored to reach Class Members. The Notice explains the litigation, Settlement, Plan of Allocation, the fee and expense request, as well as the rights and options of Settlement Class Members. The Notice also explains how to obtain additional

information regarding any aspect of the Settlement or litigation. The published notice clearly and concisely provides information concerning the Settlement, including the estimated per share recovery for Class Members. *See* Kim Decl., ¶¶67-70. This notice program complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and is similar to the procedures approved in other cases. *See Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1077); *see also In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (found notice sufficient where it informed class members of the subject matter of the litigation, the terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds); *Reynolds v. NFL*, 584 F.2d 280, 285 (8th Cir. 1978) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

## IV.   THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

In the Preliminary Approval Order, the Court preliminarily certified the Settlement Class. Nothing has changed since, and no Class Member has objected or validly sought exclusion. Thus, the Court should finally certify this action as a Class Action for the purpose of Settlement.

## CONCLUSION

In summary, the Settlement provides an immediate and guaranteed recovery for the Settlement Class and avoids the unpredictable risks inherent in continued litigation. The Settlement is thus fair, reasonable and adequate. Thus, Lead Plaintiff respectfully requests that this Court approve the Settlement, the Plan of Allocation, and finally certify this Action as a class action for the purposes of Settlement.

DATED: February 2, 2010                              Respectfully submitted,


                                                     _____/s/ Phillip Kim_____
                                                     Phillip Kim (admitted *pro hac vice*)
                                                     Laurence M. Rosen (admitted *pro hac vice*)
                                                     **THE ROSEN LAW FIRM, P.A.**
                                                     350 Fifth Avenue, Suite 5508
                                                     New York, New York  10118
                                                     Telephone:  (212) 686-1060
                                                     Facsimile:  (212) 202-3827

                                                     Lead Counsel for Plaintiffs


                                                     Mark F. James (5295)
                                                     Gary A. Dodge (0897)
                                                     **HATCH, JAMES & DODGE, P.C.**
                                                     10 West Broadway, Suite 400
                                                     Salt Lake City, Utah  84101
                                                     Telephone:  (801) 363-6363
                                                     Facsimile:  (801) 363-6666

                                                     Liaison Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2010, a true and correct copy of the foregoing document was served by CM/ECF to:

> Raymond J. Etcheverry
> Kent O. Roche
> Erik A. Christansen
> PARSONS BEHLE & LATIMER
> 201 South Main Street, Suite 1800
> Salt Lake City, Utah 84111
>
> Marc J. Sonnenfeld
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA  19103-2921
>
> *Attorneys for Defendants*

/s/ Phillip Kim