Phillip Kim (admitted *pro hac vice*)
Laurence M. Rosen (admitted *pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
350 Fifth Avenue, Suite 5508
New York, New York  10118
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

Lead Counsel for Plaintiffs

Mark F. James (5295)
Gary A. Dodge (0897)
**HATCH, JAMES & DODGE, P.C.**
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Liaison Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IN RE NATURE'S SUNSHINE PRODUCTS SECURITIES LITIGATION,<br><br>This Document relates to: All Actions. | LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND AWARD TO PLAINTIFFS<br><br>MASTER FILE NO. 2:06CV00267 TS<br><br>(Consolidated with 2:06cv00287 DB, 2:06cv00311 DAK, 2:06cv00350 BSJ and 2:06cv00442 DB)<br><br>Judge Ted Stewart<br><br>Magistrate Judge Samuel Alba |

## **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(h), The Rosen Law Firm, P.A. ("Rosen Firm" or or "Lead Counsel") respectfully submits this Memorandum of Law in support of its Motion for an award of Attorneys' Fees and Reimbursement of Expenses on behalf of all plaintiffs' counsel ("Plaintiffs' Counsel") who contributed to the prosecution of this litigation. Lead Counsel seeks an award of fees in the amount of one-third ($2 million) of the Gross Settlement Fund. Lead Counsel also seeks reimbursement from the Gross Settlement Fund of $241.639.87 in actual expenses. *See* Declaration of Phillip Kim, filed herewith ("Kim Decl.") ¶90, Exs. 3-5. Lead Counsel also seeks a nominal incentive award to each of the Lead Plaintiffs and/or Class Representatives Loh Chee Kuang, Rick Kader, and Peter Rathmann in the amount of $1,500. (the "Fee Petition").

Lead Counsel has obtained a Settlement of $6,000,000 in cash for the Settlement Class. The Settlement recovers a substantial portion (14.1%) of Plaintiffs' best case estimate of damages and is an excellent result, particularly when viewed in light of the considerable risks posed by continued litigation and uncertainty of proving liability. *E.g.,* Kim Decl., ¶9. This $6,000,000 recovery is largely attributable to Plaintiffs' Counsel's litigation efforts and was achieved only after a thorough investigation and intensive arm's-length negotiation process with a nationally regarded mediator. *E.g.,* Kim Decl., ¶7, Ex. 2.

The reaction of the Class also strongly supports the requested fee. The deadline to object to the Fee Petition has come and passed, and no Class Member has come forward to object. Pursuant to the Preliminary Approval Order, dated October 8, 2009 (docket no. 206) over 14,000 Notices were mailed to Class Members. *E.g,* Kim Decl., ¶13, Ex. 1. The Notice advised Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees

representing up to one-third of the Gross Settlement Fund, that Lead Counsel would seek reimbursement of Plaintiffs' Counsel's out-of-pocket expenses not to exceed $250,000, and seek and award to Plaintiffs not to exceed $1,500 each. *E.g.,* Kim Decl., ¶¶13, 64-66, 90, 94.

The fairness and reasonableness is confirmed when cross-checked with the Plaintiffs' Counsel's lodestar. Plaintiffs' Counsel spent a total of 4,156.85 hours of professional time prosecuting this litigation, and the requested fee compensates them for time and labor, as well as the risk associated with litigating this case on a fully contingent basis. *E.g.,* Kim Decl., ¶¶81, Exs. 3-5. Moreover, the one-third award is well within range of fee awards in similar cases throughout the country. *See Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *6 (N.D. Okla. May 28, 2003) (awarding 33% of common fund to plaintiffs' counsel and noting that 33% is the "benchmark" in such cases).

For the reasons set forth more fully below, Lead Counsel respectfully submits that such Attorneys' Fees and Expenses and Award to Plaintiffs are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken and should be awarded by the Court.

## STATEMENT OF FACTS

Lead Counsel respectfully refers the Court to the Kim Declaration for the relevant factual background.

## ARGUMENT

Lead Counsel, for their (and all other Plaintiffs' Counsel's) efforts creating the Settlement Fund on behalf of the Settlement Class, is applying for a collective fee award on a percentage basis to be paid from the fund created. It has long been recognized that a person who maintains suit that results in the creation of a benefit in which others have a common interest

may obtain fees from the common benefit. *See Boeing v. VanGemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 275 (1975); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970).

The Tenth Circuit is no exception to these principles and follows the "common fund" doctrine for attorneys' fees in securities fraud cases. *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994). The common fund doctrine "applies where the plaintiffs' successful litigation confers 'a substantial benefit on the members of an ascertainable class.'" *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995) (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)) (internal quotation marks omitted). There are two methods to determine the amount of fees to award counsel from a common fund: (1) the percentage of the fund method and (2) the lodestar method. *Id.*, at 1445. The Tenth Circuit favors the percentage of the fund approach. *See Gottlieb*, 43 F.3d at 483; *see also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (recognizing that when a common fund is created the percentage of the fund method is more appropriate).

Additionally, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent "reasonable percentages" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("the PSLRA had made percentage-of-recovery the standard for determining whether attorney's fees are reasonable."); *see also* Alba Conte, Herbert B. Newberg, *4 Newberg on Class Actions,* §14:6 ("most courts seem to apply the percentage of recovery methodology to the gross

4

settlement fund"); *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming district court award of percentage of gross settlement fund).

In all cases, however, the courts must consider the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). This approach has been called a "hybrid" approach because it combines the "percentage fee method with the specific factors traditionally used to calculate the lodestar." *Gottlieb*, 43 F.3d at 482-83. The Court has discretion in awarding fees. *See Rosenbaum*, 64 F.3d at 1444. Nonetheless, it must "articulate specific reasons for its findings," and in all cases the award must be reasonable. *Uselton*, 9 F.3d at 853; *see also Gottlieb*, 43 F.3d at 482.

## I. LEAD COUNSEL'S FEE REQUEST IS REASONABLE AND SHOULD BE APPROVED

In awarding fees in this case, this Court must consider the twelve Johnson factors, which include:

> [1] the time and labor required, [2] the novelty and difficulty of the question presented by the case, [3] the skill requisite to perform the legal service properly, [4] the preclusion of other employment by the attorneys due to acceptance of the case, [5] the customary fee, [6] whether the fee is fixed or contingent, [7] any time limitations imposed by the client or the circumstances, [8] the amount involved and the results obtained, [9] the experience, reputation and ability of the attorneys, [10] the "undesirability" of the case, [11] the nature and length of the professional relationship with the client, and [12] awards in similar cases.

*Gottlieb*, 43 F.3d at 482 n.4.[1] When the *Johnson* factors are considered, under either the percentage of the fund approach or the lodestar method, Lead Counsel's fee request is reasonable and should be approved.[2]

---

[1] Notably, not all of the *Johnson* factors will be relevant in every case. *See Uselton*, 9 F.3d at 854; *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988) ("[T]he inherent differences between statutory fee and common fund cases could justify a trial judge's decision to assign different relative weights to those factors in the two types of cases."). Here, for example, factors 7 and 11 are not applicable. Neither the Court nor Lead Plaintiffs imposed

5

### A. The Time And Labor Required And The Preclusion Of Other Employment By The Attorneys Due To The Acceptance Of The Case

Considering the risk Plaintiffs' Counsel undertook and the time expended prosecuting this case, the requested fee is reasonable. Plaintiffs' Counsel have received no compensation for their efforts during the course of this Action and have expended very substantial time and expenses in litigating for the benefit of the Class. Plaintiffs' Counsel devoted over 4,150 this case for a total lodestar of $1,829,723.50. *E.g.,* Kim Decl., ¶¶75-81. This is a "significant time commitment," *see Droegemueller v. Petroleum Dev. Corp.*, 2009 WL 961539, at *2 (D. Colo. April 7, 2009) (finding that two thousand hours was a significant time commitment), and Lead Counsel alone spent over 3,400 hours on this case. Had Lead Counsel not undertaken this case, that time could have been devoted to other cases. *See In re United Telecomms., Inc. Sec. Litig.*, 1994 WL 326007, at *3 (D. Kan. June 1, 1994). As explained in detail in the Kim Declaration, Plaintiffs' Counsel:

- Conducted an extensive pre-filing investigation;
- Researched and briefed contested lead plaintiff motions;
- Researched and briefed motions to lift the PSLRA discovery stay;
- Investigated, researched and prepared the Consolidated Amended Complaint;
- Researched and briefed defendants' dismissal motions;
- Researched and briefed class certification, including engaging in expert class discovery;
- Consulted with accounting and financial damages experts;
- Conducted extensive discovery, that included, among others, review of nearly 500,000 pages of documents obtained from party and third party discovery and Lead Counsel's investigation, and depositions of key party and non-party witnesses;

---

any unusual time limits on Lead Counsel during prosecution of the case. And, the nature and length of the professional relationship between Lead Counsel and Lead Plaintiffs are not applicable. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) (finding that factors 7 and 11 were inapplicable to the case at hand, but nonetheless approving counsel's fee request).

[2] Because several Johnson factors logically overlap, for the sake of brevity, the following analysis combines factors 1 and 4; 2 and 10; 3 and 9; and 6 and 12.

- Engaged in and resolved numerous discovery disputes with the parties and third parties;
- Communications with clients;
- Mediating the case to settlement; and
- Fully documenting the settlement and providing the settlement class with notice.

Kim Decl., ¶5.

Moreover, Plaintiffs' Counsel accomplished each of the foregoing tasks efficiently, under the direction of Lead Counsel, without unnecessarily duplicating efforts and without sacrificing the quality of their work. *See Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *8 (N.D. Okla. May 28, 2003) (approving fee where counsel "devoted significant time, energy, and resources to [the] case ... never sacrificing the quality or quantity of advocacy ... due to the case's contingent-fee status").

Although time spent is relevant, it "does not necessarily anchor the determination of reasonable fees in the common fund situation." *Brown*, 838 F.2d at 456 n.3. Other factors - such as the amount of settlement and results obtained - assume more importance where "the recovery was highly contingent and. . . the efforts of counsel were instrumental in realizing [that] recovery .... " *Id.*, at 456. Here as discussed below, it is accordingly appropriate to award counsel fees commensurate with "not only ... the actual time they expended on the case, but also. . . the substantial risk they took in proceeding with the case," and for the results they achieved. *See Millsap*, 2003 WL 21277124, at *9.

In short, each of the tasks the counsel undertook were both "reasonable and necessary" to achieve the settlement, *see Ramah Navajo Chapter v. Norton (Ramah II)*, 250 F. Supp. 2d 1303, 1311 (D.N.M. 2002), and the Court should approve the requested fee award.

### B. The Novelty And Difficulty Of The Question Presented By The Case And The Undesirability Of The Case

Like most securities fraud cases, this case involved inherently difficult questions of fact and law. *See In re Suprema Specialties, Sec. Inc. Litig.*, 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("[T]his case's complexity is undeniable, given its facts and area of law, securities law."); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult form a plaintiff's perspective in the wakes of the PSLRA."); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, and which, later, resulted in Ebbers being convicted on criminal charges).

Plaintiffs' claims depended on challenging questions of proof. For example, Plaintiffs had to prove that defendants' alleged misstatements and omissions were made with fraudulent intent, i.e. with scienter. *See In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008) (noting that scienter presents difficult questions of proof); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262,283 (D.N.J. 2007). While, Plaintiffs were successful in alleging scienter, proving posed challenges because defendants maintained there was no scienter because the statements made by KPMG that certain of the defendants' statements were knowingly false were made in the midst of the Company's internal investigation and taken out of context. Defendants strongly maintained that once the internal investigation was completed, the internal investigation found no evidence of a knowing fraud. Kim Decl., ¶¶ 45-48. Additionally, while the Company later restated its financial statements, a material percentage of the restatement involved complex tax accounting, which could have supported Defendants' position that the accounting fraud was not fraud at all, but at most negligent accounting for a complex area of financial and tax accounting. *Id.*

Loss causation and damages also presented significant risks. *See* Kim Decl., ¶¶50-51. The issue of loss causation and the ultimate measure of damages would have been the subject of the proverbial "battle of the experts" at trial, with no guarantee that the jury would credit Plaintiffs' expert over the Defendants'. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad of non actionable factors…"); *In re RJR Nabisco Inc. Sec. Litig.*, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992)(measure of damages is "subject of dispute between experts, a dispute whose outcome is impossible for [the Court] to predict").

It was within this universe that the case was "undesirable" because it required significant expenses and risk to move forward but provided no immediate or guaranteed income. *See Millsap*, 2003 WL 21277124, at *11-12; *Omnivision Techs.*, 559 F. Supp. 2d at 1046-47 ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.").

Thus, Plaintiffs' Counsel undertook a significant amount of risk by prosecuting this case. Rewarding attorneys for the risk they undertake in a contingency fee case "provides firms with the incentive to undertake the substantial commitment required in complex, class-action litigation on behalf of plaintiffs who could not otherwise finance litigation of their claims." *Millsap*, 2003 WL 21277124, at *12. This factor takes on greater importance in light of the fact that securities fraud cases do not have a high rate of success at trial. *See Omnivision*, 559 F. Supp. 2d at 1047 (noting that nationwide plaintiffs have "won only three of eleven such cases to reach verdicts since 1996"). In short, this case was complex and risky, and these factors support

9

the requested fee. *See United Telecomms.*, 1994 WL 326007, at *4 (approving one-third fee in securities fraud case given the "relatively high degree of risk involved" in the case).

### C. The Skill Requisite To Perform The Legal Service Properly And The Experience, Reputation And Ability Of The Attorneys

It is beyond any credible dispute that this case "required a high degree of skill and expertise in the field of class action securities fraud." *United Telecomms.*, 1994 WL 326007, at *3. The Settlement was the result of the participation of highly skilled and specialized attorneys practicing in the areas of securities regulations and class actions. *E.g.,* Kim Decl., ¶¶79-80, Exs. 3-5. Plaintiffs' Counsel brought their skill and expertise to this action in order to obtain compensation for the members of the Class.

The expertise and ability of opposing counsel is another factor that courts use in the quality of the work performed by Plaintiffs' Counsel. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 633-34 (D. Colo. 1976) (reasoning that plaintiffs successful litigation against some of "the country's finest law firms" supported fee award); *In re Equity Funding Corp. of Am. Secs. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Defendants were led by Parsons Behle & Latimer, and their co-counsel Morgan, Lewis & Bockius LLP. Both firms are well established and nationally regarded firms. These firms presented formidable opposition to Plaintiffs' Counsel and spared no effort in representing their clients. Given opposing counsel's skill and reputation, the $6 million settlement is a very good result and supports the requested fee.

### D. The Customary Fee And Whether The Fee Is Fixed Or Contingent

Plaintiffs' Counsel agreed to prosecute this case on a purely contingent fee basis and to advance all costs of the litigation and have not been compensated for their efforts. The traditional percentage of payment in such cases, "usually 33 1/3 percent of the recovery"

obtained. *See Ramah Navajo Chapter v. Babbitt (Ramah 1)*, 50 F. Supp. 2d 1091, 1104 (D.N.M. 1999); *accord Droegemueller*, 2009 WL 961539, at *3. "[T]he marketplace would value the services by the results obtained, not by the hours required to achieve them," and thus, the percentage of the fund method "most closely approximates the manner in which the marketplace" would compensate Lead Counsel. *Ramah 1,* 50 F. Supp. 2d at 1104; *see also Shaw v. Toshiba AM. Info. Sys.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

Here, Lead Counsel's requested fee of one-third is well within range of what the market would award in such a case, and is consistent with other cases that awarded 33%. *See, e.g., Schwartz v. Celestial Seasonings,* No. 98-K-1878 (D. Colo. Apr. 25, 2000); *Intelcom Group, Inc. Sec. Litig.*, A.A. No. 95-D-1166 (D. Colo. Mar. 21,1997) (33.3%); *Sonnenfeld v. City and County of Denver, Colorado,* C.A. No. 95-Z468 (D. Colo. Dec. 8. 1997); *Snyder v. Oneok Inc. et al.*, C.A. No. 88-C-1500E (N.D. Okla. Nov. 1,1993); *In re United Telecommunications, Inc. Sec. Litig.*, 1994 WL 326007, at *3 (D. Kan. Jun. 1, 1994) ("The one-third fee is within the range of fees awards approved fro common fund cases similar to the instant case."). Numerous courts throughout country have also awarded 1/3 of a common fund as attorneys' fees.[3]

---

[3] Other Courts have awarded one-third as attorneys' fees. *See e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 settlement); *In re Stockeryale Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (1/3 of $3.4 million settlement); *In re Corel Corp., Inc. Sec. Litig.*, 293 F.Supp.2d 484, 497 (E.D. Pa. 2003) (1/3 of $5.75 million, "the 33 1/3% fee request in this complex case is within the reasonable range."); *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) (upholding 1/3 of $7.25 million settlement); *In re Gen. Instrument Sec. Litig.*, 203 F.R.D. 417, 423-24 (S.D. Iowa 2001) (1/3 of $2.5 million settlement); *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 101-102 (D.N.J. 2001) (1/3 of $4.5 million settlement); *Muehler v. Land O'Lakes, Inc.*, 617 F.Supp. 1370, 1380-81 (D. Minn. 1985) (35%); *Kogan v. AIMCO Fox Chase, LP.*, 193 F.R.D. 496, 503 (E.D. Mich. 2000) (1/3); *Gaskill v. Gordon*, 942 F.Supp. 382, 387-88 (N.D. Ill. 1996) (35%), *aff'd* 160 F.3d 361 (7th Cir. 1998).

### E. The Amount Involved, The Results Obtained And Awards In Similar Cases

The results obtained, as well as awards in similar cases, support Lead Counsel's request for fees. "[T]he amount involved and the result obtained - is deserving of the most weight in the Court's determination of a reasonable fee." *Millsap*, 2003 WL 21277124, at *12 (citing *Brown*, 838 F.2d at 456)).

The $6 million settlement represents nearly 14.1% of Plaintiffs' best case damages scenario of $42.7 million, i.e. assuming Plaintiffs win all contested issues regarding loss causation and damages. *E.g.*, Kim Decl,, ¶¶9, 51.  14.1% recovery is well above range for settlements for in cases of this type.  According to a statistical report issued by NERA: Recent Trends in Securities Class Action Litigation 2009 Year-End Update, December 2009.[4]  The median settlement value for securities class actions were $9 million.  However, 52% of settlements were for less than $10 million.  For cases with investor losses up to $100 million, the ratio between the settlement amount and investor losses range from 2% to 5.1%.  Moreover, as discussed above, numerous courts have awarded 1/3 of the settlement amount as attorneys' fees. Therefore, under these circumstances the requested fee more than fair and reasonable.

Although an analysis of the lodestar is not required for an award of attorneys' fees in the Tenth Circuit, the requested fee here is certainly fair and reasonable, when cross-checked with the lodestar/multiplier approach. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (encouraging courts to "cross check" reasonableness of the requested percentage with the firms' lodestar); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (district court's should use the lodestar cross-check to test the reasonableness of the fee percentage requested).

---

[4]  *See* http://www.nera.com/image/Recent_Trends_Report_01.10.pdf.

Plaintiffs' Counsel expended 4,156.85 total hours of professional time on this case for a total lodestar of $1,829,723.50. *See* Kim Decl., ¶81. The requested fee represents a multiplier of 1.09. *Id.*, at ¶83. Typically, multipliers are awarded to increase the lodestar, usually one to four times. *See, e.g., Connolly v. Harris Trust Co. of Cal. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming 2.57 multiplier in bankruptcy action); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at * 17 (S.D.N.Y. Jul 27, 2007) (collecting cases); *see also Brewer v. S. Union Co.*, 607 F. Supp. 1511, 1535 (D. Colo. 1984) (approving multipliers of 3.35 and 3.00 in antitrust case); *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998) (approving 33% fee award in securities fraud case that amounted to 2.5 multiplier); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (2.5 multiplier). Therefore, Plaintiffs' lodestar multiplier of 1.09, weighs heavily in favor of the requested fee.

### F. The Reaction Of Settlement Class Members

While not an explicit *Johnson* factor, the reaction of the Settlement Class strongly supports the requested fee. The deadline to object to the Fee Petition has come as passed, and no Class Member has come forward to object to any aspect of the Settlement. *E.g.,* Kim Decl., ¶¶64-66. Over 14,000 copies of the Notice were mailed to Class Members and a Summary Notice was published in *Investor's Business Daily* and widely disseminated on-line over *Marketwire. Id.; see also* Ex. 1. The Notice advised Class Members that Lead Counsel intended to apply to the Court for an award of attorneys' fees representing one-third of the Gross Settlement Fund and that Lead Counsel would seek reimbursement of out-of-pocket expenses not to exceed $250,000, and award to each Plaintiff for $1,500. Kim Decl., ¶¶13, 64-66, 90, 94.

In response to the widely disseminated notice of Lead Counsel's anticipated fee request, not a single class member has objected. Therefore, the absence of any objectors strongly supports the requested fee. *Droegemueller v. Petroleum Development Corp.*, 2009 WL 961539, at *4 (D. Colo. Apr. 7, 2009) ("The absence of any Class members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees."); *AT&T*, 455 F.3d at 170 ("the absence of substantial objections by class members to the fees requests by counsel strongly supports approval"); *Millsap*, 2003 WL 21277124, at *14 (approving attorneys' fee request when only three class members objected).

## II. LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF COSTS IS REASONABLE AND SHOULD BE APPROVED

In addition to the requested fees, Lead Counsel also seeks $241,639.87 in reimbursement for the actual expenses of all plaintiffs' counsel. These expenses include expert witness and consultation fees, such as services provided in connection with the expert declaration for class certification submitted by Plaintiffs, financial and damages consulting in connection with the Plan of Allocation and damages models, and the services of an forensic accounting expert. Moreover, the request includes expenses that were incurred on an ongoing basis such, such items service of process, filing and PACER fees, photocopying, telephone, efax, e-discovery database scanning and document scanning, on-line research, transportation, travel, and other incidental expenses directly related to the prosecution of this case. *E.g.,* Kim Decl., ¶¶37, 90, Ex. 3-5. In complex litigation these expenses are inherently reasonable, *see In re Qwest Sav. & Inv. Plan ERISA Litig.*, 2007 WL 295545, at *2 (D. Colo. Jan 29, 2007) (approving $507,880.31 in expenses); *Boston Chicken*, 2006 WL 2338188, at *3 ($626,068); *Sprint*, 443 F. Supp. 2d at

14

1271 ($176,467); *Omnivision*, 559 F. Supp. 2d at 1049 ($560,489.90), and thus, the Court should approve them.

### III.     AWARD TO SETTLEMENT CLASS REPRESENTATIVES IS REASONABLE AND FAIR

Settlement Class Representative/Lead Plaintiff Loh Chee Kuang and Class Representatives Rick Kader and Peter Rathmann seek a nominal of $1,500 each, pursuant to the PSLRA (15 U.S.C.§78u-4(a)(4)), for their lost time in actively participating and in overseeing the Action as explained in the Kim Declaration ¶¶ 91-94.  Notably, Rick Kader attended the all-day mediation in New York, NY and participated in negotiations to ensure the interests of the Class were adequately protected. Additionally, Mr. Loh travelled from Singapore to appear at deposition in Utah and Mssrs. Kader and Rathmann also prepared for and appeared fro deposition.  Additionally, each of these Plaintiffs along with the other Lead Plaintiffs participated in numerous conference calls and discussions via-email about certain filings in this case they had been provided to review, case strategy, and settlement.  *Id.*; *see In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding $5,000 award to representative plaintiffs) (citation omitted).  Lead Counsel believes these awards are reasonable and should be approved by the Court.  As such, a nominal award of $1,500 each to Loh Chee Kuang, Rick Kader and Peter Rathmann is reasonable and justified.

## CONCLUSION

Lead Counsel submits that its requests for one-third of the Gross Settlement Fund in fees and $241,639.87 in expenses and award to Plaintiffs are reasonable, and respectfully asks that the Court approve them.

Respectfully submitted,

DATED: February 2, 2010.    /s/ Phillip Kim_____
Phillip Kim (admitted *pro hac vice*)
Laurence M. Rosen (admitted *pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
350 Fifth Avenue, Suite 5508
New York, New York  10118
Telephone:  (212) 686-1060
Facsimile:  (212) 202-3827

Lead Counsel for Plaintiffs

Mark F. James (5295)
Gary A. Dodge (0897)
**HATCH, JAMES & DODGE, P.C.**
10 West Broadway, Suite 400
Salt Lake City, Utah  84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Liaison Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2010, a true and correct copy of the foregoing document was served by CM/ECF to:

>Raymond J. Etcheverry
>Kent O. Roche
>Erik A. Christansen
>PARSONS BEHLE & LATIMER
>201 South Main Street, Suite 1800
>Salt Lake City, Utah 84111
>
>Marc J. Sonnenfeld
>Morgan, Lewis & Bockius LLP
>1701 Market Street
>Philadelphia, PA  19103-2921
>
>*Attorneys for Defendants*

           /s/ Phillip Kim